IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIJAH CANISTER,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDY BECK, et al.,<br><br>    Defendants. | No. 2:16-CV-3053-JAM-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion for summary judgment (Doc. 19). Defendants argue they are entitled to judgment as a matter of law because plaintiff failed to exhaust available administrative remedies prior to filing suit.

## I. PLAINTIFF'S ALLEGATIONS

This action proceeds on plaintiff's original unverified complaint (Doc. 1). Plaintiff names the following as defendants: (1) Spearman; (2) McLachlan; (3) Beck; (4) Grey; (5) Miller; and (6) Elwell. Plaintiff claims that his constitutional rights were violated when he was denied a religious diet for a 72-day period and not provided adequate meal substitutes. According to petitioner, defendant Grey threw his "diet card" away when he was transferred to High Desert

///

1

State Prison on August 3, 2016. Defendant Grey told plaintiff he would be provided with a new one.

Next, plaintiff claims that, on August 5, 2016, he asked defendants Miller and Elwell to "honor his religious diet." According to plaintiff, these defendants responded that, without a religious diet card, they would not be able to provide him with a religious diet. Plaintiff was instructed to submit a request to the prison chaplain. Plaintiff states that his approval for a religious diet would have appeared in his file and asked defendants Miller and Elwell "to look it up in the computer" but that they refused to do so.

According to plaintiff, on August 7, 2016, he submitted a form request to defendant McLachlan, the prison chaplain. Plaintiff asserts that defendant McLachlan treated his request as a first-time application even though his prison file showed that he had been granted a special diet card previously. Plaintiff states that defendant McLachlan instructed him to complete a different form for first-time applicants. Plaintiff alleges that he returned the form on August 12, 2016, along with another form asking why his request was being treated as a first-time application and seeking supervisory review. Plaintiff claims that defendant McLachlan's supervisor – defendant Beck – failed to respond within the 7-day timeframe outlined in the regulations.

Plaintiff states that his continued participation in the religious diet program was not approved until October 7, 2016, but did not receive his diet card until October 14, 2016. According to plaintiff, he was not provided with a religious diet for 72 days. Plaintiff alleges that defendant Spearman – the prison warden – is liable by virtue of his responsibility as a supervisor.

On August 23, 2017, the court determined the complaint was appropriate for service on defendants Beck, McLachlan, Grey, Miller, and Elwell.[1]

---

[1] The court did not find service appropriate for defendant Spearman, the prison warden. See Doc. 9 (August 23, 2017, screening order). The court stated:

> The court finds that the complaint fails to state a cognizable claim[] against defendant Spearman. Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and

2

## II. THE PARTIES' EVIDENCE

A. **Defendants' Evidence**

According to defendants, the following facts are not in dispute:

    1. Plaintiff has been an inmate at High Desert State Prison (HDSP) since August 3, 2016.

    2. The only inmate grievance concerning a religious diet submitted by plaintiff while at HDSP is appeal no. HDSP-D 16-03486.

    3. The only defendants mentioned by name in this grievance are defendants Beck and McLachlan.

    4. Plaintiff had not yet exhausted appeal no. HDSP-D 16-03486 through the second level as of the date plaintiff filed this action.

    5. Plaintiff has never exhausted appeal no. HDSP-D 16-03486 through the third and final level of review.

    6. While plaintiff submitted appeal no. HDSP-D 16-03486 for review at the third level, the appeal was rejected because plaintiff failed to complete and sign the appropriate form.

    7. Plaintiff was advised of these defects and advised to re-submit his third-level appeal, but there is no record plaintiff ever did so.

Defendants' statement of undisputed facts is supported by the declarations of M. Chappuis, the Appeals Coordinator at HDSP, see Doc. 19-5 (Chappuis declaration), and M/ Voong, Chief of the Office of Appeals for the California Department of Corrections and Rehabilitation, see Doc. 19-4 (Voong declaration).

Attached as Exhibit D to the Chappuis declaration is the second-level response to appeal no. HDSP-D 16-03486. See Doc. 19-5, pgs. 45-47. The appeal concerns plaintiff's allegations regarding religious meals when he first arrived at HDSP. See id. at 45. Plaintiff names defendants Beck and McLachlan in the appeal, but does not specifically name any other

---

acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Here, plaintiff alleges no personal conduct on the part of defendant Spearman, who will be dismissed.

Doc. 9 at pgs. 2-3.

The court recommends the District Judge adopt this conclusion as to defendant Spearman.

defendants sued in this action. The response states:

> Inmate Canister, your appeal was reviewed by the Hiring Authority for processing as a Staff Complaint. On October 3, 2016, the Hiring Authority determined your appeal did not meet the criteria to be processed as a Staff Complaint. As such, no personnel issues will be addressed.

Doc. 19-5, pg. 45.

Plaintiff's inmate appeal was "partially granted." Id. Specifically, the appeal response states:

> Your request that no retaliation be taken against you is granted as per CCR Title 15, Section 3084.1(d), Right to Appeal, states in part:
>
> > "No reprisal shall be taken against an inmate or parolee for filing an appeal."
>
> Your request to receive the RMA Diet is granted as you have been approved by Chaplain J. McLachlan and added to the Religious Diet List.
>
> Your request for monetary compensation is beyond the scope of the appeals process and will not be addressed in this appeal response.

Id. at 46.

Finally, plaintiff was advised he could seek a third-level review if he was dissatisfied with the second-level result. See id.

**B.  Plaintiff's Evidence**

Plaintiff has submitted no evidence in response to defendants' motion and, as indicated above, plaintiff's complaint is not verified.

**III. STANDARDS FOR SUMMARY JUDGMENT**

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the

moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## IV. DISCUSSION

Defendants argue they are entitled to judgment in their favor as a matter of law based on plaintiff's failure to exhaust administrative remedies through the third level of review prior to filing suit. According to defendants:

> An inmate must exhaust his administrative remedies *before* bringing a complaint. *McKinney*, 311 F.3d at 1199. He cannot comply with the PLRA's exhaustion requirements by exhausting his administrative remedies during the course of litigation. *Id.* Plaintiff did not exhaust any inmate appeal as to his claims against the Defendants in this action before he brought this action on December 30, 2016. (DUF Nos. 6-12.) The only inmate appeal Plaintiff submitted after August 3, 2016, alleging he did not receive a religious diet after his arrival at HDSP concerning his religious diet was HDSP D 16-03486. (DUF No. 7.) Plaintiff did not exhaust this grievance through the third level of review before bringing suit on December 30, 2016. (DUF Nos. 6, 9-12.) In fact, CDCR has no record of Plaintiff exhausting this grievance through the third level of review at all. (DUF Nos. 10-12.) Moreover, Plaintiff brought this action on December 30, 2016. (ECF No. 1.) When he brought this action, he had not yet received a response to his grievance at the second level, and had yet to seek a third level review. (DUF Nos. 9-11.) Accordingly, Plaintiff did not exhaust his available administrative remedies before bringing suit. Thus, the Court should grant summary judgment in favor of Defendants.

Defendants also argue plaintiff failed to exhaust his administrative remedies as to defendants who are named in the complaint but were not named in plaintiff's inmate appeal. Defendants contend:

> Under CDCR's appeal regulations, an inmate's grievance must identify by name, title or position each staff member alleged to be involved in the action or decision being appealed. (DUF No. 5; Cal. Code Regs. tit. § 3084.2(a)(3)). Thus, to properly exhaust his administrative remedies as required under the PLRA, Plaintiff was required to comply with the level of detail and other rules set forth in CDCR's regulations. *Jones*, 549 U.S. at 218. Plaintiff failed to do so with respect to Defendants Gray, Miller and Elwell.

///

6

The sole grievance Plaintiff submitted that is related to the allegations in this case—number 16-03486—only named Defendants Beck and McLachlan. (DUF Nos. 7-8.) Defendants Gray, Miller and Elwell were not named in this grievance, nor does the grievance describe their involvement in the issue being appealed, or provide information that could have put the prison on notice that Plaintiff contended that the conduct of other staff members was at issue. (*Id.*). Accordingly, this grievance is insufficient to exhaust Plaintiff's administrative remedies against these Defendants, and there is no other grievance that could have exhausted Plaintiff's claims in this case. (DUF Nos. 6-12.)

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted. The defendant bears burden of showing non-exhaustion in first instance. See Albino v. Baca, 697 F.3d 1023 (9th Cir. 2012). If met, the plaintiff bears the burden of showing that the grievance process was not available, for example because it was thwarted. See id.

The Supreme Court held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits. 548 U.S. 81, 89-96 (2006). Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90. Partial compliance is not enough. See id. Substantively, the prisoner must submit a grievance

which affords prison officials a full and fair opportunity to address the prisoner's claims. See id. at 90, 93. The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94.

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations. In California, inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The inmate must submit their appeal on the proper form, and is required to identify the staff member(s) involved as well as describing their involvement in the issue. See Cal. Code Regs. tit. 15, § 3084.2(a). These regulations require the prisoner to proceed through three levels of appeal. See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7. A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy. See id. Departmental appeals coordinators may reject a prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive appeals, use of improper language, failure to attach supporting documents, and failure to follow proper procedures. See Cal. Code Regs. tit. 15, §§ 3084.6(b). If an appeal is rejected, the inmate is to be provided clear instructions how to cure the defects therein. See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a). Group appeals are permitted on the proper form with each inmate clearly identified, and signed by each member of the group. See Cal. Code Regs. tit 15, § 3084.2(h).

In certain circumstances, the regulations make it impossible for the inmate to pursue a grievance through the entire grievance process. See Brown v. Valoff, 422 F.3d 926, 939 n. 11 (9th Cir. 2005). Where a claim contained in an inmate's grievance is characterized by prison officials as a "staff complaint" and processed through a separate confidential process, prison officials lose any authority to act on the subject of the grievance. See id. at 937 (citing Booth, 532 U.S. at 736 n. 4). Thus, the claim is exhausted when it is characterized as a "staff

8

complaint." See id. at 940. If there are separate claims in the same grievance for which further administrative review could provide relief, prison regulations require that the prisoner be notified that such claims must be appealed separately. See id. at 939. The court may presume that the absence of such a notice indicates that the grievance did not present any claims which could be appealed separate from the confidential "staff complaint" process. See id.

Based on the undisputed evidence discussed above, the court agrees with defendants and concludes plaintiff failed to exhaust administrative remedies through the third level and also failed to adequate exhaust as to defendants who were not named in plaintiff's inmate grievance. First, as established by the Voong and Chappuis declarations, plaintiff filed only one grievance concerning the subject of this litigation – denial of a religious diet after plaintiff's arrival at HDSP. Second, the declarations also establish plaintiff only appealed through the second level of review and never properly filed a third-level appeal. Finally, the declarations and Exhibit D attached to the Chappuis declaration in particular establish plaintiff never named defendants Gray, Miller, or Elwell in his grievance. Therefore, plaintiff failed to exhaust administrative remedies as to all defendants because he did not pursue his appeal through the third and final level of administrative review, and plaintiff failed to exhaust as to defendants Gray, Miller, and Elwell for the additional reason he failed to name them in his inmate grievance.

The court rejects plaintiff's argument the administrative grievance process was not "available" to him because the prison was not able under the regulations to consider his request for monetary damages. See Booth, 532 U.S. at 741; see also Ross v. Blake, 136 S. Ct. 1850 (2016). As the Supreme Court stated in Booth, exhaustion is mandatory regardless of the relief sought. See Booth, 532 U.S. at 471.

///
///
///
///
///
///

## V. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendant Spearman be dismissed for failure to state a claim; and

2. Defendants' motion for summary judgment (Doc. 19) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 17, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE